NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALAN GRECCO,<br><br>              Defendant-Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>              Respondent. | Civil Action No.: 97-0298<br><br>OPINION |

**CECCHI, District Judge.**

**I.   INTRODUCTION**

This matter comes before the Court upon motion of Alan Grecco ("Defendant" or "Movant") for relief from final judgment pursuant to Fed. R. Civ. P. 60(b). [ECF No. 44.] The United States of America ("Government" or "Respondent") opposed the motion. [ECF No. 51.] The motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Movant's motion is denied.

**II.   BACKGROUND**

    **A.   Underlying Conviction**

On July 26, 1989, Defendant was arrested and charged with an eight-count indictment alleging his involvement in a criminal enterprise—a faction of the Genovese Family of La Cosa Nostra—the "primary purpose" of which "was to obtain money for its members and associates through the operation of two illegal gambling businesses". (Protass Decl., Ex. 4.) While this group sought to illegally enrich themselves through these gambling businesses, they "used fear

and violence to eliminate competition", including "threaten[ing] the operators of rival gambling businesses." (Protass Decl., Ex. 5.) The indictment alleged that Defendant was principal assistant to the leader of this criminal enterprise; he "resolved day-to-day disputes and oversaw the Enterprise's sports and numbers gambling businesses" as well as "conducted and conspired in acts of murder and extortion to further the objectives of the enterprise." (Id.)

The indictment charged Defendant and his co-defendant with conducting the affairs of the Genovese Family through a pattern of racketeering activity, in violation of the Racketeering Influenced Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961(c). (Id.) The indictment specified six predicate racketeering acts constituting this "pattern of racketeering activity", including conspiracy to murder Vincent Mistretta.[1] (Id.) Mistretta had, according to the indictment, contacted the Lodi Police Department after a dispute with Defendant caused Mistretta to fear for his safety. (Id.) In April 1979, Mistretta was stabbed to death with an icepick by "[Defendant] and another person". (Id.)

After a lengthy trial in front of Judge Harold Ackerman, Defendant was found guilty on all counts of the indictment, including all charged predicate racketeering acts.

**B.    Sentencing**

Prior to Defendant's sentencing, the Probation Department prepared a Presentence Report ("PSR"). The PSR examined the predicate act of conspiracy to murder Mistretta under the then-mandatory Sentencing Guidelines and calculated a base offense level of 43 under Guideline

---

[1] The indictment specifically states that the conspiracy to murder Mistretta was "in violation of the laws of New Jersey". (Id.)

2

§ 2A1.1,[2] translating to a sentence of life imprisonment. (Movant Mot. pp. 12-13.) At Defendant's sentencing hearing on November 11, 1991, much of the legal argument centered on whether, and which, Sentencing Guidelines applied to Defendant's conviction. (See Protass Decl., Ex. 13.) Specifically, Defendant argued that the Sentencing Guidelines did not apply to his criminal conduct, especially the predicate offense of conspiracy to commit murder, because all such acts occurred prior to the Sentencing Reform Act. (Id.) If the Sentencing Guidelines did apply to his conduct, Defendant argued, it would violate the Ex Post Facto Clause for Guideline § 2A1.1 ("First Degree Murder") to be applied—pursuant to Guideline § 2A1.5 of the 1992 Sentencing Guidelines—since § 2A1.5 ("Conspiracy or Solicitation to Commit Murder") was added to the Guidelines *after* Defendant was indicted. (Id.) Defendant instead contended that Guideline § 2A2.1 of the 1988 Guidelines ("Assault With Intent to Commit Murder; Conspiracy or Solicitation to Commit Murder; Attempted Murder") should be applied. (Id.)

Judge Ackerman rejected Defendant's arguments, adopted the factual findings of the PSR, and concluded that Defendant's conviction carried a base offense level of 43. (Id.) Acknowledging that Guideline § 2A1.1 applied, Judge Ackerman noted:

> The commentary [to § 1B1.3] states, if the conviction is for conspiracy, it includes conduct in furtherance of the conspiracy that was known to or was reasonably foreseeable by the defendant, unquote. The probation officer continues. The relevant conduct, i.e., the conduct in furtherance of the conspiracy was murder. . . . The relevant section is the one used in the Presentence report, Section 2A1.1, which applies to first degree murder. . . . I agree with the position taken by the probation officer and by the

---

[2] Specifically, Probation found that: (1) the applicable Guideline for conspiracy was § 2X1.1, (2) under § 2X1.1, the base offense level is the same as for the object offense, (3) the object offense was First Degree Murder, and (4) the applicable Guideline for First Degree Murder is § 2A1.1, which specifies a base offense level of 43. (Movant Mot. pp. 12-13.) As set forth more fully below, the Court concludes that a base offense level of 43 was proper regardless of whether § 2X1.1 should or should not have been applied.

3

government in this regard.

(Id. at 44-45.) Given that the Guideline range for § 2A1.1 was above the statutory maximum of 20 years imprisonment, Judge Ackerman sentenced Defendant to the statutory maximum on each count of conviction, resulting in a total sentence of 65 years imprisonment. (Id. at 49-50.) In so doing, Judge Ackerman powerfully observed:

> This case, as we all know, as found by the jury's verdict, is about more than just gambling. It is about intimidation, extortion, violence and, indeed, on that fa[te]ful night in April of 1979, murder. To those who say that gambling is a victimless crime, the evidence in this case forcefully demonstrates to the contrary.
>
> The picture of Mr. Mistretta with an ice pick in the back of his neck as he lay at the bottom of the stairs in front of Mr. Galina's residence on that rainy night unfortunately was an eloquent reminder of the fact that the necessity to maintain the viability and profitability [of] a crime family, such as this, in a multi-million dollar enterprise requires something more than just calculating what number won today or what was the spread on the game.

(Id. at 55.)

### C.   Prior Appeals

On direct appeal, Movant reiterated his *ex post facto* argument, alleging that the District Court arrived at a base offense level of 43 by improperly using Guideline § 2A1.1 as commanded by § 2A1.5 of the 1992 Sentencing Guidelines. The Government countered that the District Court did not reach § 2A1.1 through § 2A1.5, but by proceeding directly from § 2E1.1, the Guideline applicable to RICO convictions. This Guideline prescribes a base offense level of either 19 or "the offense level applicable to the underlying racketeering activity." U.S.S.G. § 2E1.1(a)(2). Respondent argued that Judge Ackerman properly considered Mistretta's murder as "relevant conduct" to determine the applicable offense level under § 2E1.1's description of "underlying racketeering activity". The Third Circuit rejected Movant's arguments and affirmed

4

Movant's conviction as well as his sentence.

Movant then collaterally attacked his conviction and sentence in this Court via a petition for writ of habeas corpus under 28 U.S.C. § 2255 (the "2255 Petition").[3] (Protass Decl., Ex. 17.) With respect to Movant's sentence, Judge Ackerman denied habeas relief because Movant's arguments had been "previously litigated and decided both by this court and by the Court of Appeals" and "the intervening law cited by [Movant] does not impact the bases for this court's previous sentence". (Protass Decl., Ex. 17, at 29.) Judge Ackerman went on to explain:

> Moreover, even if this court were to re-examine [Movant's] claim, I would once again find it without merit. The parties agree that § 2E1.1 is the sentencing provision applicable to RICO claims. That section directs the court to apply "the offense level applicable to the underlying racketeering activity." Further, the introductory commentary to § 2E1.1 indicates that the court should usually apply the offense level of the underlying conduct. [Movant] was convicted of conspiracy to murder Vincent Mistretta, with the overt act being the murder of Mistretta. The sentencing provision applicable to murder is § 2A1.1. Accordingly, [Movant's] sentence was imposed pursuant to the 1988 Guidelines and did not violate [Movant's] due process rights or the ex post facto clause.

(Id. at 29-30.)

### D. Current Motion

The instant motion is Movant's latest attempt to relitigate the sentence imposed by Judge Ackerman in 1991. He contends that Judge Ackerman's sentencing determinations were "based in part on a series of errors relating to the calculation of Mr. Grecco's offense level under the then-mandatory United States Sentencing Guidelines" and those errors "caused Judge Ackerman

---

[3] Movant also collaterally attacked his conviction and sentence on several other occasions. See Grecco v. United States, Civ. No. 97 2098 (D.N.J. Apr. 17, 2000), aff'd, 29 F. App'x 817 (3d Cir. 2002); Grecco v. Williamson, Civ. No. 05-852, 2005 WL 1138463 (M.D. Pa. May 13, 2005) (seeking retroactive application of Booker), aff'd, 152 F. App'x 195 (3d Cir. 2005); Grecco v. United States, Civ. No. 06-407 (D.N.J. Aug. 6, 2007) (same).

5

to incorrectly conclude that Mr. Grecco's offense level was 47, 13 levels higher than it should have been." (Id. at 1.) In opposition, Respondent raises several procedural objections to Movant's use of Rule 60(b) and also argues that Movant is not entitled to relief on the merits.

To date, Movant has served about 25 years of his 65-year sentence. (Movant's Mot. at 1.) Movant notes that he has a "blemish-free" prison record and "has no significant disciplinary infraction or incident during his more than 24 years of imprisonment—no violence, behavioral issues, weapons, narcotics or alcohol violations." (Id. at 6.) Movant's motion recounts the ways in which he is a caring husband and father and explains: "[a]ll that Mr. Grecco wants to do is spend time with his family." (Id. at 5.)

### III. DISCUSSION

#### A. Procedural Grounds

In light of Movant's multiple attempts to seek collateral review of his conviction and sentence, Respondent raises several procedural challenges to Movant's use of the Rule 60(b) remedy. Respondent's central argument is that the instant motion should be construed as a successive 2255 petition over which this Court does not possess jurisdiction. (Resp't Opp'n at 6-7.) Additionally, Respondent argues that, even if treated as a true Rule 60(b) motion, the motion is untimely. (Id. at 5-6.) Lastly, Respondent argues that Movant may not challenge Judge Ackerman's alleged guideline calculation errors through a § 2255 proceeding. (Id. at 7-11.)

#### 1. Successive Petition

Rule 60(b) motions are creatures of the Federal Rules of Civil Procedure that are rarely cognizable in the habeas context.[4] See Gonzalez v. Crosby, 545 U.S. 524, 529-30 (2005).

---

[4] Rule 60(b) provides, in pertinent part:

6

Subsection (b)(6) of Rule 60, the subsection relied upon by Movant, "is a catch-all provision that authorizes a court to grant relief from a final judgment" in cases that present "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." Cox v. Horn, 757 F.3d 113, 120 (3d Cir. 2014) (quoting Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir. 1993)). The Third Circuit has held that Rule 60(b) analyses are to be considered on a case-by-case basis, taking into account "equitable factors" and "the particulars of a movant's case." Id. at 122 n.4 (collecting cases). However, Rule 60(b) motions are rare in post-conviction proceedings because these motions intersect with the "successive petition" bar, which requires a movant to bring all of his or her claims in one habeas petition—any claim already adjudicated, or that should have been adjudicated, in a prior habeas proceeding may not be brought in a district court without first obtaining permission from the court of appeals. Gonzalez, 545 U.S. at 529-30; 28 U.S.C. § 2244(b). The Court must therefore determine whether the instant motion is an improper successive petition that bars relief, or a properly brought motion under Rule 60(b).

Respondent relies heavily on language in Gonzalez that delineates the difference between a properly brought Rule 60(b) motion in a habeas case and a cloaked successive 2255 petition.[5] In Gonzalez, the Supreme Court explained that a properly brought Rule 60(b) application will <u>not</u> seek to attack the prior resolution of the movant's claims by the federal courts on the merits.

---

On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason justifying relief from the operation of the judgment.

[5] The Court notes that Gonzalez expressly limited its application to state habeas cases, as opposed to § 2255 proceedings for federal criminal actions. See 535 U.S. at 529 n.3. Since Gonzalez was decided, several courts have applied its reasoning in 2255 cases; this Court will likewise apply Gonzalez. See, e.g., In re Pickard, 681 F.3d 1201 (10th Cir. 2012) (discussed infra); U.S. v. Henry, 2014 WL 1345953 (E.D.Pa. Apr. 4, 2014).

Id. at 532. Rather, a properly brought Rule 60(b) motion is one that "attacks . . . some defect in the integrity of the federal habeas proceedings," such as "[f]raud on the habeas court. . . ." Id. at 532, 532 n.5. The Court gave, as an example of fraud on the court, a witness who gave a fraudulent reason for refusing to appear a habeas hearing. Id. at 532 n.5.

In this case, Movant argues that Rule 60(b) relief is appropriate because the Government misled the Court. According to Movant, in the initial 2255 proceeding, Government counsel misrepresented the state of the law to Judge Ackerman, by misquoting, and selectively quoting from, the United States Sentencing Commission's explanatory note to Amendment 311—the 1990 Guidelines amendment concerning conspiracy to commit murder. (Movant's Reply at 4-5.) Movant contends that the Government "distracted and misled" Judge Ackerman as he considered the application of the Guidelines to Movant's sentence. (Id. at 6.)

Courts in and outside this circuit have found that reliance on Rule 60(b) is appropriate in cases of alleged prosecutorial misconduct. For example, in In re Pickard, 681 F.3d 1201 (10th Cir. 2012), the Tenth Circuit held that a Rule 60(b) motion was not a cloaked successive petition where the movant alleged that a prosecutor made a false statement to the movant for the purpose of forestalling discovery. See also United States v. Pelullo, 2010 WL 2629080, at *14 (D.N.J. June 25, 2010) (holding that use of Rule 60(b) was appropriate where it was alleged that prosecutor misrepresented the involvement of a federal agency). Conversely, in Jones, the District of Arizona held that a prosecutor's alleged failure to disclose exculpatory evidence could not form the basis for a Rule 60(b) motion because the prosecutor was not under any legal obligation to disclose the exculpatory evidence, as Brady disclosures are not applicable in post-conviction proceedings. Jones v. Ryan, 2013 WL 5348294, *6 (D.Az. Sept. 24, 2013).

Respondent argues that, despite Movant's characterization of his motion, it is clearly an

8

attempt to re-litigate the merits of Judge Ackerman's Guideline application. (Resp't Opp'n at 6-7.) It is true that a simple repackaging of already asserted claims, or claims that could have been asserted, should be treated as a successive petition. See Yuzary v. U.S., 2007 WL 4276864, at *5 (S.D.N.Y. Nov. 30, 2007) (treating Rule 60(b) motion as successive petition where "all but one of the claims brought in the instant motion have been previously heard, resolved, and appealed. . . .") Yet, the Third Circuit has held, albeit in an unpublished decision, that where the merits are only indirectly implicated, reliance on Rule 60(b) may still be appropriate. U.S. v. Andrews, 463 F. App'x 169, 172 n. 1 (3d Cir. 2012).

In order to determine, then, whether the motion is actually a cloaked, successive petition, the Court must consider whether Judge Ackerman's res judicata ruling was a ruling "on the merits". As explained above, Judge Ackerman denied habeas relief on the ground that the arguments had been "previously litigated and decided both by this court and by the Court of Appeals" and "the intervening law cited by [Movant] does not impact the bases for this court's previous sentence". (Protass Decl., Ex. 17, at 29.) Further, the Judge ruled on the alternative basis that he would again deny the claim on its merits if he were to consider them. (Id. at 29-30.) Language in Gonzalez provides guidance concerning whether a res judicata ruling is "on the merits" for purposes of Rule 60(b). In a footnote, the Supreme Court explained:

> The term "on the merits" has multiple usages. We refer here to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief. . . . When a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim.

Gonzalez, 545 U.S. at 532 (emphasis added) (citation omitted). The Court went on to note: when a movant "merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-

9

of-limitations bar", then such claims are not made "on the merits". Id. (emphasis added).

Drawing on this distinction, the Court concludes that Judge Ackerman's res judicata ruling was a ruling on the merits. Unlike a failure to exhaust, procedural default, or statute-of-limitations bar, Judge Ackerman's ruling did not preclude a merits determination. Quite the contrary, his ruling was premised on the notion that the merits had already been determined. Moreover, Movant's main argument—that Judge Ackerman incorrectly applied the relevant guidelines at sentencing—clearly attacks the appropriateness of his sentence and therefore squarely fits within the Gonzalez Court's definition of "on the merits". This reading and application of Gonzalez is buttressed by Movant's acknowledgement that he had the opportunity to fully present his claims on the merits.[6] In contrast, courts hearing Rule 60(b) motions in habeas cases do so in order to ensure that a movant has had a full opportunity to present his or her claim on the merits. See Magwood v. Patterson, 561 U.S. 320, 345 (2010) ("[T]o determine whether an application is 'second or successive,' a court must look to the substance of the claim the application raises and decide whether the petitioner had a full and fair opportunity to raise the claim in the prior application."); see also Michael v. Wetzel, 570 F. App'x 176, 180 (3d Cir. 2014) cert. denied, 2015 WL 998637 (U.S. Mar. 9, 2015) (finding that movant raised a proper Rule 60(b) motion because the district court never reached the merits of movant's claims); United States v. Pelullo, 2011 WL 3022534, at *14 (D.N.J. July 22, 2011) ("Pelullo is not claiming that these asserted misrepresentations prevented him from fairly presenting any of the claims that he raised in his initial § 2255 motion.").

---

[6] Indeed, Movant argues that he has already had a full opportunity to present his claims in the 2255 Petition. (Mov. Reply at 6.). This acknowledgement is critical because, if Movant already had a full opportunity to present his claims on the merits, then his instant motion should be treated as a forbidden second attempt to seek a merit ruling on his already-presented claims.

10

As the foregoing analysis indicates, whether Movant's Rule 60(b) motion should be treated as a successive petition under § 2255, necessitates a careful analysis. After conducting such a review, the Court concludes that Movant's motion should be treated as a successive 2255 petition. The Court will not transfer this case to the Court of Appeals for resolution, however, because it clear from the analysis below that the claim would fail on the merits. See Robinson v. Johnson, 313 F.3d 128, 139 (3d Cir. 2002) ("When a second or successive habeas petition is erroneously filed in a district court without the permission of a court of appeals, the district court's only option is to dismiss the petition or transfer it to the court of appeals".)

Given the conclusion that Movant's motion is a successive 2255 petition, the Court need not address Respondent's arguments regarding the timeliness of the motion under Rule 60(b) & (c). However, even if the Court were to consider the instant motion proper under Rule 60(b), and even if the Court found Movant's motion timely under Rule 60(c), this would lead only to the analysis set forth below and the conclusion that Movant's motion fails on the merits.[7]

### B. Guidelines Calculation

Although the Court finds that the instant motion is an improperly filed successive petition, the Court shall nonetheless examine the merits of Movant's claim. For the reasons set forth below, Movant's stated grievances are unavailing and should therefore be dismissed rather than transferred to the court of appeals.

There are "a sequence of steps for the court to follow" in calculating a defendant's sentence under the Guidelines. United States v. Aquino, 555 F.3d 124, 127 (3d Cir. 2009);

---

[7] Respondent's remaining argument—that Movant may not challenge Judge Ackerman's alleged guideline calculation errors through a § 2255 proceeding—does not affect the Court's decision because the Court finds that Movant is not entitled to relief on the ultimate merits of his motion.

11

United States v. Johnson, 155 F.3d 682, 684 (3d Cir. 1998). The first step is to "[d]etermine the applicable offense guideline" in Chapter Two by referring to the Statutory Index. U.S.S.G.[8] §§ 1B1.1(a); 1B1.2(a). At the second step, the court must "[d]etermine the base offense level and apply any appropriate specific offense characteristics". U.S.S.G. § 1B1.1(b). The parties do not dispute Judge Ackerman's step one determination that Guideline § 2E1.1 applies to Movant's RICO conviction. (See Movant's Mot. at 37; Resp't Opp'n at 11); U.S.S.G. at p. A.15. Judge Ackerman's step two determination—the base offense level—is, however, hotly contested.

Guideline § 2E1.1 prescribes a base offense level of either 19 or "the offense level applicable to the underlying racketeering activity." U.S.S.G. § 2E1.1(a)(2). Movant argues that the "underlying racketeering activity" at issue is conspiracy to commit murder and therefore Guideline § 2A2.1 applies, generating a base offense level of 20. (Movant's Mot. at 37-38.) Respondent counters that the "underlying racketeering activity" was the murder of Vincent Mistretta and therefore Guideline § 2A1.1 applies,[9] generating a base offense level of 43. (Resp't Opp'n at 11-13; Protass Decl., Ex. 17, at 29-30.)

The key question presented by Movant's motion becomes: what is the relevant "underlying racketeering activity" for the purposes of Guideline § 2E1.1? Guideline § 1B1.3(a)—"Relevant Conduct (Factors that Determine Guideline Range)"—states:

> Unless otherwise specified, [] the base offense level where the guideline specifies more than one base offense level . . . [and] cross references in Chapter Two . . . shall be determined on the

---

[8] Movant notes that "Judge Ackerman demonstrated confusion concerning [] the proper version of the Guidelines Manual to use". (Movant Mot. at 21.). Because Movant contends that the 1988 Revised Guidelines Manual should be applied, the Court shall analyze Movant's motion using that Manual.

[9] Application Note 2 to Guideline § 2E1.1 states that "[i]f the underlying conduct violates state law, the offense level corresponding the most analogous federal offense is to be used". There does not seem to be any dispute at this stage that Guideline § 2A2.1 applies to conspiracy to commit murder and that Guideline § 2A1.1 applies to the murder of Mistretta. The key dispute, simply put, is which of those provisions applies.

12

> basis of the following: (1) all acts and omissions committed or aided and abetted by the defendant or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense[.]

U.S.S.G. § 1B1.3(a). Application Note 1 to this provision makes clear that "[i]n the case of a criminal activity undertaken in concert with others . . . the conduct for which the defendant 'would otherwise be accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." Id. On its face, then, Guideline § 1B1.3(a) allowed Judge Ackerman to consider the murder of Mistretta as "relevant conduct" when determining if a base offense level of 19 or a higher base offense level should apply under Guideline § 2E1.1.[10] However, Movant contends that Guideline § 1B1.3 is inapplicable when conducting a base offense level analysis under Guideline § 2E1.1(a)(2) because: (1) § 2E1.1 does not contain a "cross-reference" or specify "more than one base offense level" within the meaning of § 1B1.3, and (2) § 2E1.1 itself "otherwise specifi[es]" an alternative definition of relevant conduct. (Movant's Reply at 9-18.) Accordingly, Movant argues, Mistretta's murder cannot be considered as "relevant conduct" and therefore the applicable Guideline, pursuant to § 2E1.1(a)(2), is § 2A2.1—covering Movant's predicate RICO offense of conspiracy to commit murder. This argument is unavailing.

Every circuit to consider whether a base offense level calculation under § 2E1.1(a)(2)

---

[10] It is immaterial under Guideline § 1B1.3(a) whether Defendant or his co-conspirator was actually the person swinging the icepick that killed Mistretta. The jury found Defendant guilty of conspiracy to commit murder as a predicate to his RICO charge and § 1B1.3 covers "all acts . . . aided and abetted by the defendant" as well as "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3(a); see also United States v. Carrozza, 4 F.3d 70, 75 (1st Cir. 1993) (discussing the breadth of § 1B1.3 in the RICO context).

13

includes "relevant conduct" under § 1B1.3(a) has rejected Movant's arguments. See United States v. Bradley, 644 F.3d 1213, 1296-98 (11th Cir. 2011); United States v. Tocco, 200 F.3d 401, 430 (6th Cir. 2000); United States v. Ruggiero, 100 F.3d 284, 292 (2d Cir. 1996); United States v. Carrozza, 4 F.3d 70, 77 (1st Cir. 1993); United States v. Masters, 978 F.2d 281, 284 (7th Cir. 1992) (Easterbrook, J.).[11] The Court is persuaded by these decisions.

In Masters, the Seventh Circuit considered whether "relevant conduct" under § 1B1.3(a) may be reviewed to determine the base offense level under § 2E1.1(a)(2). There, as here, the defendant was convicted of racketeering and conspiracy to commit racketeering under 18 U.S.C. § 1962. Masters, 978 F.2d at 283. Advancing the same argument as Movant here, Masters conceded that Guideline § 2E1.1 applied but that, pursuant to § 2E1.1(a)(2), Guideline § 2A2.1 should be applied because the relevant "underlying racketeering activity" was solicitation to commit murder, not murder. Id. The district court disagreed, "finding that Masters '[was] directly responsible for the murder of his wife,'" and applied a base offense level of 43.[12] Id. Masters, like Movant, "was neither charged with nor convicted of murder." Id. at 284. The Seventh Circuit, in an opinion by Judge Easterbrook, affirmed. Judge Easterbrook's reasoning is directly applicable here:

> Cross-references within the guidelines introduce real-offense principles into the charge-offense system. Section 2E1.1(a)(2), which requires the court to use "the offense level applicable to the underlying racketeering activity", speaks of the underlying *activity*

---

[11] While the Third Circuit has not considered this exact issue in a manner that binds the Court, our Circuit has agreed with its sister circuits in a non-precedential opinion. See United States v. Gonzalez, 401 F. App'x 727, 729 (3d Cir. 2010) (Defendant's "relevant conduct was used . . . to identify the pertinent 'underlying racketeering activity' pursuant to § 2E1.1's cross reference. This process is permissible." (citation omitted)).

[12] Although the district court "calculated the sentence in three ways, each of which produced 40 years' imprisonment," the Seventh Circuit in Masters affirmed defendant's sentence on the basis of "relevant conduct"—*i.e.*, murder—pursuant to Guideline § 1B1.3(a) and § 2E1.1(a)(2). Id. at 284.

14

> and not an underlying *conviction*. Often there will be no other conviction, and the existence of one in this case does not change the nature of the cross-reference. Section 1B1.3(a)(iii) says that "cross references in Chapter Two . . . shall be determined on the basis of the following: (1) all acts and omissions committed and aided or abetted by the defendant . . . that occurred during the commission of the offense of conviction". The murder of Dianne Masters occurred during the racketeering conspiracy. So § 2E1.1(a)(2), read from the perspective of § 1B1.3(a), directs the court to the murder guideline rather than the solicitation guideline.

Id. at 284-85.[13]

The First Circuit in Carrozza employed an even more extensive analysis of the interaction between Guideline § 1B1.3(a) and § 2E1.1(a)(2) to reach the same conclusion. There, defendant Raymond Patriarca was convicted of racketeering and conspiracy to commit racketeering under 18 U.S.C. § 1962, as well as four counts of interstate travel in aid of racketeering (18 U.S.C. § 1952—the "Travel Act") and one count of conspiring to violate the Travel Act. Carrozza, 4 F.3d at 72. The defendant was sentenced to 97 months imprisonment and the Government appealed, contesting the district court's finding that "the relevant conduct for sentencing purposes in this RICO case is limited to just the predicate Travel Act violations charged against Patriarca and conduct relating directly to those charged predicates." Id. The First Circuit straightforwardly explained that the "RICO guideline, § 2E1.1, specifies more than one base

---

[13] Movant argues that, five years later in Zizzo, the Seventh Circuit "ignored Masters and properly held—based on USSG § 2E1.1, Application Note 2—that § 1B1.2(a) (choice of offense guideline), not § 1B1.3 (relevant conduct), provides the governing rule for determining the 'most analogous federal offense.'" (Movant Reply Br. p. 11.) Even assuming this reading of Zizzo is correct, Movant's contention is beside the point. The Zizzo passage quoted by Movant was concerned with determining whether the defendant's state law offense ("conspiracy to intimidate Willis Johnson") was more analogous to the "threatening communications" covered by § 2B3.2 or § 2A6.1. United States v. Zizzo, 120 F.3d 1338, 1361 (7th Cir. 1997). Here, by contrast, there is no dispute that Mistretta's murder falls under § 2A1.1 and that conspiracy to murder Mistretta falls under § 2A2.1; the issue is whether Judge Ackerman's finding that Defendant murdered Mistretta can be applied under § 2E1.1(a)(2). Zizzo did nothing to abrogate Masters in this respect. Movant's argument with respect to United States v. Diaz, 176 F.3d 52, 123 (2d Cir. 1999), fails for the same reason.

15

offense level, including a cross reference to 'the offense level applicable to the underlying racketeering activity,'" and therefore "§ 1B1.3 requires the base offense level for § 2E1.1 to be determined on the basis of relevant conduct as that term is described in § 1B1.3(a)(1)." Id. at 75. Moreover, the court rejected the exact position taken by Movant, saying:

> the district court limited relevant conduct to only those predicate acts that were charged against Patriarca personally—namely, the Travel Act violations. In doing so, the district court improperly treated the term "underlying racketeering activity" in § 2E1.1(a)(2) as if it "otherwise specified" that relevant conduct should not apply to each "offense of conviction" (including the RICO conspiracy count and the substantive RICO count) and instead should apply only to the predicate Travel Act violations. This was error. . . . Section 2E1.1—specifically the term "underlying racketeering activity"—contains no explicit instructions displacing the general rule in § 1B1.3 that relevant conduct includes uncharged conduct. In a RICO case, there is no justification for limiting "underlying racketeering activity" just to predicate acts specifically charged against one defendant.

Id. at 77. The court then explicitly held that "the term 'underlying racketeering activity' in § 2E1.1(a)(2) means simply any act, whether or not charged against defendant personally, that qualifies as a RICO predicate act under 18 U.S.C. § 1961(1) and is otherwise relevant conduct under § 1B1.3." Id.[14]

Three important points bear mention with respect to Masters and Carrozza. First, both the First and Seventh Circuits make clear that § 2E1.1 axiomatically includes a "cross-reference", thus bringing the mention of "underlying racketeering activity" within the purview of § 1B1.3. Masters, 978 F.2d at 284-85; Carrozza, 4 F.3d at 75. Second, the facts of Masters are

---

[14] Carrozza also rejected the contention that Application Notes in Guideline § 1B1.2 limited the district court to only predicate acts under § 2E1.1(a)(2), explaining: while it "is correct that for the most part, the court will determine the *applicable guideline* by looking to the charge of which the offender was convicted, real offense principles enter into the punishment prescribed in the guidelines through the relevant conduct guideline, § 1B1.3." Id. at 80 (citations omitted).

16

strikingly similar to the case at bar. There, as here, Defendant was not convicted of the underlying murder but of a predicate inchoate offense (in Masters, it was solicitation to commit murder). However, because the "cross-reference" in Guideline § 2E1.1 "introduce[s] real-offense principles into the charge-offense system", the district judge was allowed to consider the "real offense" of murder. This rationale applies with equal force here: despite Movant's conviction for *conspiracy* to commit murder, Judge Ackerman properly considered the *murder* of Mistretta as Movant's "underlying racketeering activity" pursuant to § 2E1.1's cross-reference.

Finally, Movant's argument that Guideline § 2E1.1 itself "otherwise specif[ies]" a definition of "relevant conduct" is at odds with the plain language of the Guidelines and was flatly rejected by Carrozza. Movant contends that "Application Note 1 [to § 2E1.1] states a general rule (that the applicable Chapter 2 offense conduct section is the one applicable to the offense(s) found by the jury to be the defendant's 'racketeering activity'), while Application Note 2 explains how to *apply* that rule when the charged and convicted 'act of racketeering' is a state law violation". (Movant's Reply at 14-15.) However, the language of Application Note 1 does not explicitly limit "underlying racketeering activity" to only "the offense(s) found by the jury to be the defendant's 'racketeering activity'". Indeed, as Judge Easterbrook recognized in Masters, "[o]ften there will be no other conviction" aside from the substantive RICO charge; under Movant's reading, Application Note 1 would provide no guidance to district judges regarding "relevant conduct" in such cases. In stark contrast, Guidelines that seek to "otherwise specify" within the meaning of § 1B1.3 do so with explicit language. See, e.g., United States v. Cespedes, 663 F.3d 685, 689 (3d Cir. 2011) (holding that Guideline § 3C1.2 "otherwise specif[ies]" relevant conduct); United States v. Lovaas, 241 F.3d 900, 904 (7th Cir. 2001) (holding that Guideline § 2G2.2 "otherwise specif[ies]" relevant conduct); United States v. Jennings, 991 F.2d 725, 734

17

(11th Cir. 1993) (holding that Guideline § 2A2.4 "otherwise specif[ies]" relevant conduct) As the First Circuit succinctly explained, "Section 2E1.1—specifically the term 'underlying racketeering activity'—contains no explicit instructions displacing the general rule in § 1B1.3 that relevant conduct includes uncharged conduct." Carrozza, 4 F.3d at 77.

As set forth above, the plain language of § 2E1.1 and § 1B1.3, as well as the overwhelming weight of persuasive authority, compel the conclusion that Mistretta's murder can be considered under § 2E1.1(a)(2). Accordingly, Judge Ackerman properly calculated Movant's sentence and the Court dismisses Movant's case.

## IV. CONCLUSION

The Court finds that the instant motion is an impermissible successive 2255 petition and, therefore, may only dismiss the motion or transfer it to the Third Circuit for that court's consideration. However, because Movant's motion also fails on the merits, the Court dismisses Movant's case and, to the extent one is required, no certificate of appealability shall issue. An appropriate Order follows this Opinion.

**DATE:** March 31, 2015

_____
**CLAIRE C. CECCHI, U.S.D.J.**